FILED
DEC - 6 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ERNEST BURGE and SHARON BURGE, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) ) |
| DAVOL INC. and C. R. BARD INC. | ) ) |
| Defendants. | ) ) |

07CV6885
JUDGE GRADY
MAG. JUDGE KEYS

## COMPLAINT AT LAW

NOW COMES the Plaintiffs, ERNEST BURGE and SHARON BURGE, by and through their attorneys, COSTELLO, MCMAHON & BURKE, LTD., and complaining of the Defendants, DAVOL INC. And C.R. BARD INC., states as follows:

### JURISDICTION AND VENUE

1. The jurisdiction of this court arises under diversity of citizenship and amount as contained in 28 United States Code § 1332.

2. Venue is proper in the Northern District of Illinois because Plaintiffs reside in this judicial district, and both Defendants earn substantial compensation and profits from its sales of products in question in this district. Also, a substantial part of the events giving rise to the claims at issue arose in this district.

### PARTIES

3. Plaintiffs, ERNEST BURGE and his wife SHARON BURGE are citizens and residents of the County of Cook, State of Illinois.

1

4.      Defendant, DAVOL INC. ("DAVOL") is a corporation that is incorporated under the laws of the State of Rhode Island. DAVOL has its principal place of business in the State of Rhode Island. It manufactures the ® Kugel Mesh Patches ("Kugel Patch") at 100 Sockanosset Crossroad, Cranston, Rhode Island. DAVOL has a registered agent in Rhode Island at CT Corporation System, 10 Weybosset St., Providence, Rhode Island. DAVOL focuses its business on products in key surgical specialties, including hernia repair, hemostasis, orthopedics, and laparoscopy.

5.      Defendant, C. R. BARD INC. ("BARD") is a corporation that is incorporated under the laws of the State of New Jersey. It is the corporate parent/stockholder of DAVOL and participates in the manufacture and distribution of the Kugel Patch. It also manufactures and supplies DAVOL with material that forms part of the Kugel Patch. BARD at all times relevant did substantial and continuous business in the State of Illinois.

### Facts and Background Common to all Counts

6.      Defendant DAVOL designed, manufactured and distributed the Kugel Patch, a hernia mesh patch that was inserted into ERNEST BURGE's body.

7.      Defendant DAVOL, through its agents, servants and employees, participated in the manufacture and delivery of the Kugel Patch that was inserted into ERNEST BURGE's body.

8.      The Defendants submitted their 510k Application to the Federal Drug Administration (hereinafter referred to as the "FDA") on January 22, 2001. Following this 510k Application the Kugel Patch was authorized by the FDA as a Class II medical device.

9.      Immediately after the Kugel Patches were placed on the market, DAVOL and BARD began receiving actual notices of memory ring failures and Kugel Patch defects. DAVOL and BARD withheld this notice of the defective and dangerous condition associated with the Kugel

Patches from ERNEST BURGE, Plaintiff's physicians, and the general public.

10.     After the defective and dangerous Kugel Patch was already placed on the market, Defendants DAVOL and BARD conducted physician screenings and reviews as early as 2002. An Establishment Inspection Report ("EIR") conducted by the FDA in 2006 found that the post market survey validation process of the device was incomplete and failed to include all the data from the physicians surveyed during this time. Whether intentionally or negligently, BARD and DAVOL failed to properly conduct and monitor their own post market design validation physician surveys including those which demonstrated unfavorable or "dissatisfied" results. These complaints and concerns of the physician surveyors were actively concealed by DAVOL and BARD from ERNEST BURGE, Plaintiff's surgeons, and the public at large.

11.     On December 11, 2003 a Kugel Mesh used to repair ERNEST BURGE's hernia defect. A wound infection developed and treatment ensued including but not limited to numerous surgeries.

12.     The Kugel Patch hernia repair product implanted in ERNEST BURGE was designed, manufactured, sold and distributed by DAVOL to be used by surgeons for hernia repair surgeries and was further represented by DAVOL to be an appropriate, cost-effective and suitable product for such purpose.

13.     No later than September 2004, Defendants uncovered serious problems with the weld process involving the memory recoil ring. Despite attempts to correct the problem at the plant, BARD and DAVOL found the corrective measures to be ineffective and the process still not in control. DAVOL and BARD were aware these weld issues had existed from the time the Kugel Patches were originally placed on the market and all current lots suffered from this dangerous defect. This information was intentionally withheld at this time from ERNEST BURGE, Plaintiff's physicians,

the FDA, and all other individuals who had been implanted or would be implanted with Kugel Patches using the memory recoil ring.

14. During the 2006 EIR, corporate executives informed the FDA that the spring and summer period of 2005 showed a marketed increase in the number of complaints with the Kugel Patch and the memory recoil ring. In spite of their knowledge of increasing complaints and complications, DAVOL and BARD waited until August 30, 2005 to initiate a partial Kugel Patch distribution hold. DAVOL and BARD actively and intentionally chose not to immediately inform ERNEST BURGE, Plaintiff's physicians, the FDA, and all other individuals who had been implanted or would be implanted with Kugel Patches using the memory recoil ring. DAVOL and BARD waited until December 2005 to notify the public of the potential severity of the complications which were resulting from the dangerous and defective Kugel Patches and have since admitted that the product quality hold and release procedure was not applied on a timely basis.

15. An FDA Class I recall is issued for problems related to medical devices that are potentially life-threatening or could cause a serious risk to the health of the patients implanted with the devices.

16. On December 22, 2005, DAVOL recalled many sizes of Kugel Patches under a Class I recall notice.

17. The Kugel Patch was recalled due to a faulty "memory recoil ring" that can break under pressure. Incidents of ring migration, intestinal fistulae, bowel perforation and even death have been reported.

18. The FDA conducted the aforementioned EIR investigations in January and February of 2006. The results of these investigations determined, among other things, that BARD and DAVOL:

    i.    had excluded ring failure events which should have been included from their

|      | complication database, reports, and recall notices; |
|------|---|
| ii.  | misidentified numerous Kugel Patch complication events; |
| iii. | failed to apply the product quality hold and release procedure on a timely basis; |
| iv.  | failed to properly follow the procedures for conducting design validation review; |
| v.   | failed to identify all the actions necessary to correct and prevent the recurrence of further ring break and Kugel Patch complications; specifically, they provided no justification for including only the Extra Large Kugel Patch sizes in the December 2005 recall; |
| vi.  | failed to provide full information which they knew regarding numerous Kugel Patch complaints; |
| vii. | failed to actually perform strength testing on memory recoil rings for all sizes of Kugel patch before putting them into the stream of commerce; |
| viii.| failed to maintain appropriate sources for quality data to identify, track, and trend existing and potential causes for the ring failures and Kugel Patch complaints resulting in numerous inconsistencies and errors in the raw data and from the actual complaints and what was placed in the electronic databases. |

19. On March 24, 2006, the initial Class I recall on the Kugel Patch was expanded to include several more sizes of the patch and numerous additional lots of the defective hernia mesh product.

20. On January 10, 2007, the existing recall on the Kugel Patch was again expanded to encompass further production lots of the defective hernia mesh product.

21. Plaintiff was never informed by Defendants of the defective, dangerous, and recalled nature of the Kugel Patch and memory recoil ring which had been implanted until well after discovering of Bard's and Davol's FDA recall of the product.

22. Neither ERNEST BURGE nor Plaintiff's physicians were aware of the defective and dangerous condition of the Kugel Patch or that this unreasonably defective condition was the cause of ERNEST BURGE's injuries until some time after BARD and DAVOL chose to finally inform the general public of the defective nature of the Kugel Patches and the subsequent recalls. Furthermore,

ERNEST BURGE learned within the last two years that injuries associated with the recalled Kugel Hernia Patch were similar to those suffered by him and upon further inquiry he learned that a Kugel Hernia Patch was placed inside of him on December 11, 2003 during a hernia surgery.

23. That since December 11, 2003 EARNEST BURGE has suffered from infection problems has undergone more than 12 surgeries to repair his insides and is currently under physician's care.

24. That ERNEST BURGE has suffered was caused to sustain personal injuries, was caused to experience pain and suffering, and will in the future experience pain and suffering, experience and will experience in the future disability and disfigurement, otherwise suffered a loss of his normal life, has lost and will in the future lose financial gains which he otherwise would have made and acquired, has been and will in the future be kept from attending to his ordinary affairs and duties, and has been and will become liable for sums of money for hospital and medical care and attention and has been otherwise injured in a pecuniary way.

25. That SHARON BURGE makes a claim for loss of consortium due to her husband's Kugel Patch injuries.

26. That DAVOL and BARD withdrew a large number of Kugel Patches as a result of the high complication and failure rate of the product.

27. Upon information and belief DAVOL and BARD failed to comply with the FDA application and reporting requirements.

28. Upon information and belief DAVOL and BARD were aware of the high degree of complication and failure rate associated with their Kugel Patch before it was recalled.

29. Upon information and belief DAVOL and BARD were aware of the defect in manufacture and design prior to the recall of their Kugel Patch.

30. Upon information and belief, the complications and failures associated with the Kugel Patches are not limited to the sizes which DAVOL and BARD has already recalled.

31. Upon information and belief, DAVOL and BARD were aware of the defect in manufacture and design of the non-recalled Kugel Patch sizes and chose not to issue a recall on all Kugel Patches in the face of the high degree of complication and failure rates.

### COUNT I - Negligence

32. ERNEST BURGE re-alleges and incorporates by reference Paragraphs 1-30.

33. Defendants DAVOL and BARD were negligent to ERNEST BURGE in the following respects:

34. DAVOL and BARD at all times mentioned had a duty to properly manufacture, test, inspect, package, label, distribute, market, examine, maintain, supply, provide proper warnings and prepare for use the Kugel Patch.

35. DAVOL and BARD at all times mentioned knew or in the exercise of reasonable care should have known, that the Kugel Patches were of such a nature that they were not properly manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold supplied, prepared and/or provided with the proper warnings, and were unreasonably likely to injure the Kugel Patch's users.

36. DAVOL and BARD so negligently and carelessly designed, manufactured, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine and supplied the Kugel Patch, that they were dangerous and unsafe for the use and purpose for which it was intended.

37. DAVOL and BARD were aware of the probable consequences of the Kugel Patch. DAVOL and BARD knew or should have known the Kugel Patch would cause serious injury; they failed to

7

disclose the known or knowable risks associated with the Kugel Patch. DAVOL and BARD willfully and deliberately failed to avoid those consequences, and in doing so, DAVOL and BARD acted in conscious disregard of the safety of ERNEST BURGE.

38. Defendants DAVOL and BARD owed a duty to ERNEST BURGE to adequately warn him and his treating physicians, of the risks of breakage, separation, tearing and splitting associated with the Kugel Patch and the resulting harm and risk it would cause patients.

39. Defendants DAVOL and BARD breached their duty by failing to comply with state and federal regulations concerning the study, testing, design, development, manufacture, inspection, production, advertisement, marketing, promotion, distribution, and/or sale of the Kugel Patch.

40. That as a direct and proximate result of one or more of the aforementioned careless negligent acts or omissions of the Defendants, and each of them, the Plaintiff, ERNEST BURGE, was caused to sustain personal injuries, was caused to experience pain and suffering, and will in the future experience pain and suffering, experience and will experience in the future disability and disfigurement, otherwise suffered a loss of his normal life, has lost and will in the future lose financial gains which he otherwise would have made and acquired, has been and will in the future be kept from attending to his ordinary affairs and duties, and has been and will become liable for sums of money for hospital and medical care and attention and has been otherwise injured in a pecuniary way.

41. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL,

BARD and others from similar conduct in the future.

## COUNT II- Strict Product Liability

42.  ERNEST BURGE re-alleges and incorporates by reference Paragraphs 1-30.

43.  Defendants DAVOL and BARD are strictly liable to ERNEST BURGE in the following respects:

44.  DAVOL and BARD designed, manufactured, assembled, distributed, conveyed and/or sold the Kugel Patch for hernia repair surgery.

45.  The Kugel Patches subject to the Class I recall were defective because they failed to perform safely and effectively for the purpose they were originally designed. ERNEST BURGE's Kugel Patch was a Class I recalled device that failed while in his body causing him to develop serious physical complications which required subsequent, painful and unnecessary removal surgery of his Kugel Patch.

46.  At all times mentioned, the Kugel Patch was substantially in the same condition as when it left the possession of DAVOL.

47.  The Kugel Patch implanted into ERNEST BURGE was being used in a manner reasonably anticipated at the time it was implanted in him by his surgeon.

48.  The Kugel Patches, like the one found in ERNEST BURGE, at the time they left the possession of DAVOL and BARD were inherently dangerous for their intended use and were unreasonably dangerous products which presented and constituted an unreasonable risk of danger and injury to ERNEST BURGE as follows:

  i.  The Kugel Patch was sold in a defective condition by design and manufacture;

ii. The Kugel Patch as designed and manufactured was unsafe to ERNEST BURGE;

iii. The Kugel Patch as designed and manufactured was unreasonably dangerous to ERNEST BURGE;

iv. The Kugel Patch did not perform safely as an ordinary consumer/patient, like ERNEST BURGE, would expect;

v. The Kugel Patch as designed and manufactured was unsafe for its intended use;

vi. DAVOL and BARD failed to warn the end user about the dangers and risks of the product;

vii. DAVOL and BARD knew the component parts of the Kugel Patch as implemented through design and/or manufacture could cause injury to the end user;

viii. Failing to implement an adequate, safe and effective "memory recoil ring" and/or its interaction with the mesh of the Kugel Patch to withstand the foreseeable stresses they would be subject to within the intra-abdominal space;

ix. Failing to avoid migration of the Kugel Patch and/or its components from the initial site of the hernia repair surgery.

x. Any other acts or failures to act by DAVOL or BARD regarding the studying, testing, designing, developing, manufacturing, inspecting, producing, advertising, marketing, promoting, distributing, and/or sale of Kugel Patches for hernia repair surgery as will be learned during discovery.

49. That as a direct and proximate result of one or more of the aforementioned acts or omissions of the Defendants, and each of them, the Plaintiff, ERNEST BURGE, was caused to sustain personal injuries, was caused to experience pain and suffering, and will in the future experience pain and suffering, experience and will experience in the future disability and disfigurement, otherwise suffered a loss of his normal life, has lost and will in the future lose financial gains which he otherwise would have made and acquired, has been and will in the future be kept from attending to his ordinary affairs and duties, and has been and will become liable for sums of money for hospital and medical care and attention and has been otherwise injured in a pecuniary way.

50. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

### COUNT III-Breach of Implied Warranty

51. ERNEST BURGE re-alleges and incorporates by reference Paragraphs 1-30.

52. Defendants DAVOL and BARD are liable to ERNEST BURGE for their breach of implied warranty in the following respect:

53. DAVOL and BARD sold the Kugel Patch which was implanted in ERNEST BURGE. DAVOL and BARD impliedly warranted to ERNEST BURGE, his physicians and health care providers, that the Kugel Patch was of merchantable quality and safe for the use for which they were intended.

54. DAVOL and BARD knew or should have known that the Kugel Patch at the time of sale was intended to be used for the purpose of surgically implanting them into the body for hernia repair.

55. ERNEST BURGE, his physicians and health care providers reasonably relied on DAVOL's and BARD's judgment, indications and statements that the Kugel Patch was fit for such use.

56. When the Kugel Patches were distributed into the stream of commerce and sold by DAVOL and BARD, they were unsafe for their intended use, and not of merchantable quality, as warranted by DAVOL and BARD in that they had very dangerous propensities when used as intended and implanted into a patient's body where they could cause serious injury of harm or death to the end

user.

57. That as a direct and proximate result of one or more of the aforementioned acts or omissions of the Defendants, and each of them, the Plaintiff, ERNEST BURGE, was caused to sustain personal injuries, was caused to experience pain and suffering, and will in the future experience pain and suffering, experience and will experience in the future disability and disfigurement, otherwise suffered a loss of his normal life, has lost and will in the future lose financial gains which he otherwise would have made and acquired, has been and will in the future be kept from attending to his ordinary affairs and duties, and has been and will become liable for sums of money for hospital and medical care and attention and has been otherwise injured in a pecuniary way.

### COUNT IV-Failure to Warn

58. ERNEST BURGE re-alleges and incorporates by reference Paragraphs 1-30.

59. In the course of business, DAVOL and BARD designed, manufactured and sold the Kugel Patch to the hospital for hernia repair surgeries.

60. At the time of the design, manufacture and sale of the Kugel Patch, and more specifically at the time ERNEST BURGE received the Kugel Patch, they were defective and unreasonably dangerous when put to their intended and reasonably anticipated use. Further the Kugel Patches were not accompanied by proper warnings regarding significant adverse consequences associated with the Kugel Patch.

61. BARD and DAVOL failed to provide any warnings, labels or instructions of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution. The reasonably foreseeable use of the products involved significant dangers not readily obvious to the ordinary user of the products. BARD and DAVOL failed to warn of the known or knowable injuries

associated with malfunction of the Kugel Patch, including but not limited to rupture of the Patch and severe peritonitis and infection which would require subsequent surgical procedures and could result in severe injuries.

62.   The dangerous and defective conditions in the Kugel Patches existed at the time they were delivered by the manufacturer to the distributor. At the time ERNEST BURGE had his hernia repair surgery the Kugel Patch was in the same condition as when manufactured, distributed and sold.

63.   ERNEST BURGE did not know at the time of use of the Kugel Patch, not at any time prior thereto, of the existence of the defects in the Patches.

64.   That as a direct and proximate result of Defendant's failure to warn, and each of them, the Plaintiff, ERNEST BURGE, was caused to sustain personal injuries, was caused to experience pain and suffering, and will in the future experience pain and suffering, experience and will experience in the future disability and disfigurement, otherwise suffered a loss of his normal life, has lost and will in the future lose financial gains which he otherwise would have made and acquired, has been and will in the future be kept from attending to his ordinary affairs and duties, and has been and will become liable for sums of money for hospital and medical care and attention and has been otherwise injured in a pecuniary way. ERNEST BURGE suffered the aforementioned injuries and damages as a direct result of DAVOL and BARD's failure to warn.

65.   The conduct of BARD and DAVOL in continuing to market, promote, sell and distribute the Kugel Patch after obtaining knowledge that the products were failing and not performing as represented and intended, showed a complete indifference to or conscious disregard for the safety of others justifying an award in such sum which will serve to deter BARD, DAVOL and others from

similar conduct.

## COUNT V-Fraud

66. ERNEST BURGE re-alleges and incorporates by reference Paragraphs 1-30.

67. In the course of business, DAVOL and BARD designed, manufactured and sold the Kugel Patch for hernia repair surgeries.

68. At the time of the design, manufacture and sale of the Kugel Patch, and more specifically at the time ERNEST BURGE received the Kugel Patch, they were defective and unreasonably dangerous when put to their intended and reasonably anticipated use. Further the Kugel Patches were not accompanied by proper warnings regarding significant adverse consequences associated with the Kugel Patch.

69. BARD and DAVOL was aware of the dangerous and defective condition of the products and intentionally withheld this information from ERNEST BURGE, Plaintiff's physicians, and the general public even though these significant dangers were not readily obvious to the ordinary user of the products, even after a post surgical complication had arisen.

70. BARD and DAVOL fraudulently presented to ERNEST BURGE, Plaintiff's physicians, and the general public that the Kugel Patch was a safe and effective product while they were fully aware that the dangerous and defective nature of the Kugel could and would cause injuries such as those suffered by Plaintiff.

71. ERNEST BURGE and Plaintiff's physicians relied upon the fraudulent misrepresentations and concealments of Defendants and allowed for the defective Kugel Patch to be implanted.

72. As a direct and proximate result of ERNEST BURGE's reliance on BARD's and DAVOL's fraudulent misrepresentations and concealments, the Plaintiff, ERNEST BURGE, was caused to

sustain personal injuries, was caused to experience pain and suffering, and will in the future experience pain and suffering, experience and will experience in the future disability and disfigurement, otherwise suffered a loss of his normal life, has lost and will in the future lose financial gains which he otherwise would have made and acquired, has been and will in the future be kept from attending to his ordinary affairs and duties, and has been and will become liable for sums of money for hospital and medical care and attention and has been otherwise injured in a pecuniary way.

73. The conduct of BARD and DAVOL in continuing to fraudulently market, promote, sell and distribute the Kugel Patch while fraudulently concealing knowledge that the products were failing and not performing as represented and intended, showed a complete indifference to or conscious disregard for the safety of others justifying an award in such sum which will serve to deter BARD, DAVOL and others from similar conduct.

## COUNT VI- Res Ipsa Loquitur

74. ERNEST BURGE re-alleges and incorporates by reference Paragraphs 1-30.

75. Defendants owed a duty to provide a Kugel Hernia Patch that was in good condition, was not defective, and that was sanitary, free of infection, and would not harm the Plaintiff ERNEST BURGE, when installed during his surgery on December 11, 2003.

76. Defendants designed, manufactured, and distributed the Kugel Hernia Patch, which was under the charge and control of the Defendants, and they had charge of the Kugel Hernia Patch, and equipment, prior to the installation of the Kugel Hernia Patch during the surgery, with the exception of the reception of this by the medical care facility and the surgeon, and under these circumstances, this invokes the legal doctrine of res ipsa loquitor as to these Defendants.

77. All of the elements for the application of res ipsa loquitor are present under the circumstances, are present in this case as follows:

    i. The injuries and damages were attributable to the defective Kugel Hernia Patch, which was, with the exception of the surgery, under the exclusive control of the Defendants, and had not changed or in any way left the control of the Defendants, during the course of the time that it was manufactured, distributed, and ultimately used during the surgery.

    ii. That in the normal course of events no injury would have occurred if the Defendants had used ordinary care while the Kugel Hernia Patch was being utilized in the surgery, said equipment being under the control of the Defendants.

    iii. The Defendants, in their control and management and operation of the Kugel Hernia Patch, owed a duty to the Plaintiff to use ordinary care with regard to the proper operation of the Kugel Hernia Patch and/or safety precautions so as to make sure that it was sanitary, free of infection, which it was not, in this case, And the Defendants had to make sure that the Kugel Hernia Patch was safe to be implanted in the Plaintiff, which did not occur under these circumstances,

78. That as a direct and proximate result of the aforementioned, the Plaintiff, ERNEST BURGE, was caused to sustain personal injuries, was caused to experience pain and suffering, and will in the future experience pain and suffering, experience and will experience in the future disability and disfigurement, otherwise suffered a loss of his normal life, has lost and will in the future lose financial gains which he otherwise would have made and acquired, has been and will in the future be kept from attending to his ordinary affairs and duties, and has been and will become liable for sums of money for hospital and medical care and attention and has been otherwise injured in a pecuniary way.

79. The conduct of BARD and DAVOL in continuing to market, promote, sell and distribute the Kugel Patch after obtaining knowledge that the products were failing and not performing as represented and intended, showed a complete indifference to or conscious disregard for the safety of

others justifying an award in such sum which will serve to deter BARD, DAVOL and others from similar conduct.

### COUNT VII-Breach of Express of Warranty

80. ERNEST BURGE re-alleges and incorporates by reference Paragraphs 1-30.

81. Plaintiff claims damages from Defendants on the ground that Defendant made, and breached, certain express warranties concerning the Kugel Hernia Patch. Plaintiff contends express warranties were created by contract executed between parties when the Kugel Hernia Patch was purchased for installation. In the Plaintiff, during the surgery, as hereinafter recited, and the Kugel Hernia Patch delivered to the Plaintiff did not conform to the express warranties created. The failure of the Kugel Hernia Patch to conform to the express warranties was a proximate cause of the Plaintiff's injuries and damages. Plaintiff was an individual whom Defendants might reasonably expect to use, consume, and be affected by the Kugel Hernia Patch.

### COUNT VIII- Loss of Consortium

82. Plaintiff, SHARON BURGE, re-alleges and incorporates by reference Paragraphs 1-78.

83. That, Plaintiff SHARON BURGE, was the wife of Plaintiff, ERNEST BURGE.

84. On the aforesaid date and at all times relevant hereto, SHARON BURGE, was caused to suffer a loss of consortium including, but not limited to the love, society, affection, and services of her husband, ERNEST BURGE.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs, ERNEST BURGE and SHARON BURGE prays for damages against the Defendants in a sum in excess of the limits for Federal Court jurisdiction, for an award of post judgment interest at the maximum rate allowable under the law, for all fees incurred in

the enforcement and collection of the judgment, for all costs and expenses of litigation and for any and all other legal or equitable relief to which the Plaintiffs may prove themselves entitled.

**PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL COUNTS.**

                          Respectfully submitted,

                          COSTELLO, MCMAHON & BURKE, LTD.

                          By: _____
                                Richard James Murphy

**COSTELLO, MCMAHON & BURKE, LTD.**
Attorneys for Plaintiff
150 N. Wacker Drive, Suite 3050
Chicago, IL 60606
(312) 541-9700